IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

CARLTON D. WELCH, #146869,     )
                                 )
          Plaintiff,          )
                                 )
     v.                      )        CASE NO. 2:10-CV-749-MHT
                                 )             [WO]
                                 )
PRISON HEALTH SERVICES, INC.,[1]  )
                                 )
         Defendant.       )

## RECOMMENDATION OF THE MAGISTRATE JUDGE

## I.  INTRODUCTION

This cause of action is before the court on a 42 U.S.C. § 1983 complaint filed on

August 15, 2009 by Carlton Welch ["Welch"], a state inmate, against Prison Health

Services, Inc. ["PHS"],  the corporate medical care provider for the Alabama Depart of

Corrections during the time period relevant to the claims for relief.[2]  In this complaint,

---

[1] Prison Health Services, Inc. is now known as Corizon, Inc.  For purposes of this Recommendation, the court will refer to the defendant as identified by the plaintiff.

[2] The plaintiff initially submitted the instant complaint to the United States District Court for the Northern District of Alabama and, although the Clerk of that court stamped the complaint "filed" on August 24, 2009, Welch swore under penalty of perjury that he executed the complaint on August 15, 2009, *Complaint - Doc. No. 1* at 4, and certified he presented the complaint to prison officials for mailing on this same date - August 15, 2009.  *Supplemental Attachment to Complaint - Doc. No. 1* at 7.  The law is well settled that a pro se inmate's complaint is deemed filed the date it is delivered to prison officials for mailing.  *Houston v. Lack,* 487 U.S. 266, 271-272 (1988); *Adams v. United States*, 173 F.3d 1339, 1340-41 (11th Cir. 1999); *Garvey v. Vaughn*, 993 F.2d 776, 780 (11th Cir. 1993). "Absent evidence to the contrary in the form of prison logs or other records, [this court] must assume that [the instant complaint] was delivered to prison authorities the day [Welch] signed it ...." *Washington v. United States*, 243 F.3d 1299, 1301 (11th Cir. 2001).  In light of the foregoing, the court considers August 15, 2009 as the date of filing.  The United States District Court for the Northern District of Alabama transferred the case to this court on August 26, 2010 and it was received by the Clerk of this court on September 8, 2010.

Welch asserts that from July 17, 2007 until August 13, 2007 "the medical care provider at Draper Correctional Facility proved deliberately indifferent to a serious medical need when they delayed treatment and ignored repeated sick call request[s]" for an injury he suffered to his left hand on July 16, 2007. *Supplemental Attachment to Complaint - Doc. No. 1* at 6.

The defendant filed answers, a special report, supplemental responses and relevant supporting evidentiary materials, including prison and free-world medical records compiled contemporaneously with treatment provided to Welch, addressing Welch's claims for relief. Pursuant to the orders entered in this case, the court deems it appropriate to construe the aforementioned responsive documents as a motion for summary judgment. *Order of June 12, 2013 - Doc. No. 17*. Thus, this case is now pending on the defendant's motion for summary judgment. Upon consideration of this motion, the evidentiary materials filed in support thereof and the plaintiff's responses to the motion and answers, the court concludes that the defendant's motion for summary judgment is due to be granted.

## II.  STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258,

1263 (11th Cir. 2007) (per curiam) (citation to former rule omitted); Fed.R.Civ.P. Rule 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").[3]  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue [- now dispute -] of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  *Id.* at 322-324.

The defendants have met their evidentiary burden and demonstrated the absence of any genuine dispute of material fact.  Thus, the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists.  *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed.R.Civ.P. 56(e)(3) ("If a party fails to properly support an assertion of fact or

---

[3]Effective December 1, 2010, Rule 56 was "revised to improve the procedures for presenting and deciding summary-judgment motions." Fed.R.Civ.P. 56 Advisory Committee Notes.  Under this revision, "[s]ubdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word -- genuine 'issue' becomes genuine 'dispute.'  'Dispute' better reflects the focus of a summary-judgment determination." *Id*.  "'Shall' is also restored to express the direction to grant summary judgment." *Id*.  Thus, although Rule 56 underwent stylistic changes, its substance remains the same and, therefore, those cases citing the prior versions of the rule remain equally applicable to the current rule.

fails to properly address another party's assertion of fact by [citing to materials in the record including affidavits, relevant documents or other materials] the court may ... grant summary judgment if the motion and supporting materials -- including the facts considered undisputed -- show that the movant is entitled to it."). A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263.

> In civil actions filed by inmates, federal courts
>
> must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530, 126 S.Ct. 2572, 2578, 165 L.Ed.2d 697 (2006) (internal citation omitted). Consequently, to survive the defendants' properly supported motion for summary judgment, Welch is required to produce "sufficient [favorable] evidence" which would be admissible at trial supporting his claims for relief. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); Rule 56(e), *Federal Rules of Civil Procedure*. "If the evidence [on which the nonmoving party relies] is merely colorable ... or is not significantly probative ... summary judgment may be granted." *Id*. at 249-250. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party.

*Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)."

*Walker v. Darby*, 911 F.2d 1573, 1576-1577 (11th Cir. 1990). Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine dispute of material fact and, therefore, do not suffice to oppose a motion for summary judgment. *Holifield*, 115 F.3d at 1564 n.6 (A plaintiff's "conclusory assertions ..., in the absence of [admissible] supporting evidence, are insufficient to withstand summary judgment."); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (grant of summary judgment appropriate where inmate produces nothing beyond "his own conclusory allegations" challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("[M]ere verification of party's own conclusory allegations is not sufficient to oppose summary judgment...."); *Evers v. General Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("[C]onclusory allegations without specific supporting facts have no probative value."). Hence, when a plaintiff fails to set forth specific facts supported by requisite evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (If on any part of the prima facie case the plaintiff presents insufficient evidence to require

submission of the case to the trier of fact, granting of summary judgment is appropriate.).

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Property Located at 5800 SW 74th Avenue, Miami, Florida*, 363 F.3d 1099, 1101 (11th Cir. 2004). What is material is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248; *Lofton v. Secretary of the Department of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment."). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted). To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates that there is no genuine dispute of material fact and that the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex*, 477 U.S. at 323-324 (Summary judgment is appropriate

where pleadings, evidentiary materials and affidavits before the court show there is no genuine dispute as to a requisite material fact.); *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001) (To establish a genuine dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor.).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *Beard*, 548 U.S. at 525, 126 S.Ct. at 2576; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus, the plaintiff's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case. In this case, Welch fails to demonstrate a requisite genuine dispute of material fact as is necessary to preclude summary judgment. *Matsushita*, *supra*.

### III. DISCUSSION

### A.  Relevant Material Facts[4]

On July 16, 2007, Welch fell and injured his left wrist while on a work squad at Draper and correctional officials transported Welch to the health care unit at Staton

---

[4]The facts are taken from the pleadings filed by the plaintiff and the undisputed medical records submitted in this case.

Correctional Facility for treatment.[5]  Attending medical personnel at Draper examined Welch, placed a splint on his left wrist and referred him to Jackson Hospital in Montgomery, Alabama for further evaluation and treatment.  Medical personnel in the emergency at Jackson Hospital observed that Welch arrived with a splint in tact on his left wrist and placed him in a sling.  *Defendant's Exhibits - Doc. No. 25-1* at 6.  The screening nurse accessed the nature of Welch's injury, noted his complaints of pain, undertook an examination of the injury and ordered X-rays of Welch's left wrist due to a possible fracture.  *Id*. at 12.  For the initial X-rays, the splint was removed and "[f]our radiographs of the left wrist [were] performed."  *Id*.  Upon review of these images, the radiologist determined that the "capitate projects posterior to the lunate consistent with a peri-lunate dislocation of the wrist.  No fracture is identified.  The soft tissues appear intact. IMPRESSION: 1. PERI-LUNATE DISLOCATION OF THE WRIST."  *Id*.  Welch's injury did not involve an open wound nor any fracture of the bones.  Based on the foregoing, the attending emergency room physician splinted Welch's wrist in an attempt to reduce the dislocation.  *Id*. at 6-7.  The physician provided Welch a Lortab for pain, advised him that in the future he should take over the counter non-steroidal anti-inflammatory medications ["NSAIDs] to alleviate his pain/swelling and instructed Welch to notify his treating physician if his condition did not improve or worsened.  *Id*.  Welch was then discharged

_____

[5]Draper and Staton are on adjoining properties and inmates confined at Draper receive medical treatment at the Staton Health Care Unit.

to the custody of correctional officials.

Upon his return to Draper, medical personnel ordered that he remain overnight in the health care unit at Staton for observation. *Plaintiff's Response - Doc. No. 27-1* at 2. Welch asserts that from July 17, 2007 until August 13, 2007 he "submitted three (3) ... sick call requests" requesting additional medical treatment due to continued pain and swelling in his wrist. *Supplemental Attachment to Complaint - Doc. No. 1* at 5. Welch alleges that correctional medical personnel ignored these requests. This conclusory allegation is wholly and completely refuted by the prison medical records and the records of Dr. Tai Chung compiled contemporaneously with the treatment provided to Welch. *Defendants' Exhibits - Doc. No. 45-1* at 30-34. Specifically, medical personnel provided NSAIDs to Welch in an effort to alleviate the pain and swelling. *Id*. at 34. In addition, within two weeks of Welch's injury, Draper medical personnel, in response to Welch's complaints, requested authorization for a free-world orthopedic evaluation of Welch's wrist injury. On July 30, 2007, Dr. Paul Corbier, a physician for PHS, noted the wrist dislocation suffered by Welch and Welch's continued inability to actively "flex or bend [the] wrist." *Id*. Dr. Corbier also acknowledged Welch's continued complaints of pain and the swelling present in Welch's wrist despite having been given NSAIDs. *Id*. After assessment of Welch's condition, Dr. Corbier authorized an immediate referral to Dr. Tai Chung, a free-world orthopedic surgeon, for evaluation and treatment of Welch's wrist dislocation. Dr. Corbier

9

marked the authorization "URGENT" and transmitted it by facsimile to appropriate health care officials on July 31, 2013 for use in scheduling an appointment with Dr. Chung.  *Id*. Upon receipt of the request from PHS for an orthopedic consultation, Dr. Chung's office provided Welch an appointment on August 13, 2007.  *Id*. at 32-33.

Dr. Chung examined Welch, reviewed the X-rays which "showed a perilunate dorsal dislocation of the left wrist" with no fractures of the carpal bones and advised Welch that he could expect "to have chronic pain and stiffness in the left wrist because of the severity of the [dislocation]."  *Id*. at 32.  Dr. Chung also "[d]iscuss[ed] open reduction of the wrist with [Welch]."  *Id*. at 32.  Open reduction constitutes a surgical procedure to reduce the dislocation of the wrist and Dr. Chung explained to Welch the "[r]isks of surgery includ[ing] anesthesia, infection, neurovascular and tendon damage, [and potential] incomplete resolution of symptoms and return of function in the wrist."  *Id*.  Welch acknowledged his understanding of the procedure, including the associated risks, and indicated his desire to "proceed with surgery."  *Id*.

During surgery, which proceeded as an outpatient procedure at Baptist Medical Center East on August 14, 2007, "[t]he lunate [a bone in the proximal carpal row of the wrist] was pinned to the radius....  The capitate [the largest of the carpal bones located in the distal carpal row of the wrist] was then reduced onto the lunate and ... pin[ned] ... to the lunate.  The scaphoid [a bone in the proximal carpal row] was then reduced onto the

capitate and pinned onto it...."  *Id*. at 25.   Upon completion of the surgery, Dr. Chung

utilized a mobile imaging device to verify "good reduction of the dislocation."  *Id*.; *Id*. at

20 (Radiology Report of August 14, 2007) ("Post reduction film shows satisfactory

alignment for healing.").  Dr. Chung requested that Welch follow-up with him in a couple

of weeks.  *Id*. at 13.   Correctional medical personnel followed the instructions of Dr.

Chung and continued to refer Welch to the orthopedist for follow-up appointments.

During an office visit with Dr. Chung on August 22, 2007, Dr. Chung observed that

the "[w]ounds are clean.  PLAN:  Remove sutures. Leave pins in.  Apply a short arm

fiberglass cast."  *Id*. at 17.  Welch returned for a follow-up appointment with Dr. Chung

on September 6, 2007, at which time Dr. Chung noted that Welch had "cut his cast down....

He has no complaint."  *Id*. at 14.  ("The cast has been cut in the forearm portion.  There is

still a wrist and hand portion left.  He can extend and flex his thumb and fingers.").  Dr.

Chung again examined Welch on September 27, 2007 and noted Welch "has some pain....

Pin tracks are clean.  Wound is healed.  X-rays look good.  PLAN:  Remove pins.  Redress

the wound.  Exercises.  Wrist brace for support."  *Id*.   On October 29, 2007, Welch

returned for another appointment with Dr. Chung at which time Welch  presented with a

complaint of some pain.  *Id*. at 9.  Dr. Chung examined Welch and determined that the

"[w]ound is healed.  There is mild tenderness.  Extension and flexion are about 20 degrees

each.  Pronation and supination about 80 degrees each.  He can almost make a fist.  X-rays

brought with him showed that the bones are in satisfactory alignment.  PLAN:  I have discussed proper exercises with him to do and the importance of these to maximize return of function...."  *Id*.  On December 18, 2007, Dr. Chung again examined Welch and found that his "[w]ound is healed.  There is some tenderness over the dorsum.  He can make a full fist.  X-rays today showed that the bones remain in satisfactory position.  There may be some increased density in the lunate.  PLAN:  Discuss prognosis with him.  He may get lunate avascular necrosis from his injury.  Right now it is a bit early to tell as yet.  He should continue on regaining motion and strength in the wrist and the hand."  *Id*. at 8.

On October 31, 2008, during his incarceration at St. Clair Correctional Facility, medical personnel obtained X-rays of Welch's left wrist due to his complaints of pain.  *Defendants' Exhibits - Doc. No. 25-1* at 21.  These X-rays "demonstrate[d] no fracture, dislocation, or subluxation.  Bone density is normal and uniform.  There is no evidence of instability.  There is no ulnar negative or positive variance.  The soft tissue planes are over penetrated, without radiopaque foreign body or gas."  *Id*.  The impression of the radiologist was an "INTACT LEFT WRIST."  *Id*.

## B.  The Statute of Limitations

Welch asserts that PHS, through its employees, deprived him of adequate medical treatment from July 17, 2007, the day after his injury, until his referral to Dr. Chung on August 13, 2007.  In support of this assertion, Welch maintains that during this time period

he filed sick call requests seeking treatment for pain and swelling in his wrist which he alleges were ignored by medical personnel at Draper.  The undisputed medical records of both PHS and Dr. Chung, however, refute this conclusory allegation.  Specifically, these records establish that correctional medical personnel provided Welch various NSAIDs to alleviate his pain and swelling, and, on September 30, 2007, within two weeks of his injury, authorized referral to Dr. Chung for further evaluation of his wrist injury.  *Defendants' Exhibits - Doc. No. 45* at 34.  Pursuant to the appointment provided by Dr. Chung, he first examined Welch on August 13, 2007 at which time he advised Welch of a surgical option for treatment of the perilunate dislocation of his left wrist.  *Id*. at 32.

In its answers, PHS raises the affirmative defense that Welch's claims are barred by the applicable statute of limitations as such claims relate to an alleged lack of treatment which occurred on or before August 13, 2007, a period of time outside the two-year period of limitation.  In response to this defense, Welch maintains that his complaint because he "is permanently injured" the limitation period is perpetual and his complaint was therefore timely filed.  *Plaintiff's Response to Affirmative Defenses - Doc. No. 27* at 3

The deliberate indifference claim presented by Welch addresses the adequacy of medical treatment provided to him until his referral to Dr. Chung on August 13, 2007.

> All constitutional claims brought under § 1983 are tort actions, subject to the statute of limitations governing personal injury actions in the state where the §1983 action has been brought. *Wilson v. Garcia*, 471 U.S. 261, 275-76, 105 S.Ct. 1938, 1946-47, 85 L.Ed.2d 254 (1985).  [The plaintiff's] claim was brought in Alabama where the governing limitations period is two years.

13

> Ala. Code § 6-2-38; *Jones v. Preuit & Mauldin*, 876 F.2d 1480, 1483 (11th Cir. 1989) (en banc).  Therefore, in order to have his claim heard, [the plaintiff is] required to bring it within two years from the date the limitations period began to run.

*McNair v. Allen*, 515 F.3d 1168, 1173 (11th Cir. 2008).  The statute of limitations begins to run when "'the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights.'"  *Calhoun v. Alabama Alcoholic Beverage Control Board,* 705 F.2d 422, 425 (11th Cir.1983) (quoting *Reeb v. Economic Opportunity Atlanta, Inc.,* 516 F .2d 924, 930 (5th Cir.1975)).   A section 1983 action therefore accrues when the plaintiff knows or has reason to know of the underlying claim.  *Calhoun*, 705 F.2d at 424.

As previously noted, *infra* at 1 n.2, the earliest date the complaint could be deemed to have been filed is August 15, 2009.  By it express terms, the tolling provision of *Ala. Code* § 6-2-8(a) provides no basis for relief to Welch from application of the time bar.[6] Welch knew or clearly had reason to know of his claim regarding an alleged lack of treatment from July 17, 2007 until August 13, 2007during this period of time as Welch repeatedly concedes knowledge of the pain/swelling in his wrist throughout the period of time relevant to the complaint.  Moreover, at the very latest, Welch knew or should have known of all facts relevant to this cause of action immediately upon his examination by Dr. Chung on August 13, 2007.  Despite this knowledge, Welch waited until April 15, 2009

---

[6]This section allows tolling of the limitation period for an individual who "is, at the time the right accrues ... insane...."  *Ala. Code* § 6-2-8(a).  The pleadings filed herein demonstrate that Welch was not legally insane at the time of the challenged event so as to warrant tolling under *Ala. Code* § 6-2-8(a).

14

to file this cause of action challenging the medical treatment provided to him from July 17, 2007 until August 13, 2007, which is beyond two years from the time when his claims accrued. Specifically, the statute of limitations began to run on the claim presented herein on August 14, 2007.[7] The two-year period of limitation ran uninterrupted until it expired on August 14, 2009. Therefore, the deliberate indifference claim presented in this cause of action is barred by the two-year statute of limitations rendering this action frivolous. *Clark v. Georgia Pardons and Parole Board*, 915 F.2d 636, 640 n.2 (11th Cir. 1990) ("The expiration of the statute of limitations is an affirmative defense the existence of which warrants dismissal as frivolous. *See Franklin* [*v. State of Oregon*], 563 F.Supp. [1310] at 1330, 1332.").[8] In light of the foregoing, summary judgment is due to be granted in favor

---

[7]In computing the period of limitation, "exclude the day of the event that triggers the period[.]" Rule 6(a)(1)(A), *Federal Rules of Civil Procedure*.

[8]The court notes that any claim of deliberate indifference with respect to the treatment provided to Welch by medical personnel at Jackson Hospital on July 16, 2007 would likewise be barred by the two-year period of limitation. Moreover, as the court previously advised Welch, claims of negligence and/or medical malpractice arising from such treatment provide no basis for relief in a 42 U.S.C. § 1983 action. *Order of June 25, 2013 - Doc. No. 20* at 1-2. In addition, it appears to the court that emergency room personnel did not act under color of state law when rendering treatment to Welch so as to set forth a viable claim for relief. *Willis v. University Health Services, Inc.*, 993 F.2d 837, 840 (11th Cir. 1993) (internal quotations and citations omitted) ("To state a [viable] claim for relief in an action brought under § 1983, [a plaintiff] must establish that [he was] deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law.... [T]he under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful...."); *Harvey v. Harvey*, 949 F.2d 1127 (11th Cir. 1992) (The Court distinguished private physicians not under contract with a state institution from the physician in *West*, 949 F.2d at 1133 n.14, and determined that "private physicians unaffiliated with a state institution" are not state actors.). The vast majority of federal courts agree that treatment by a non-contract private physician, nurse or hospital upon referral or on an emergency basis does not satisfy the requirements for state action. *Sykes v. McPhillips*, 412 F.Supp.2d 197, 202-2014 (N.D.N.Y. 2006) (private physician who contracted to provide emergency services to private hospital but did not contract with state to provide medical treatment to inmates escaped § 1983 state actor status where "physician engaged in a single encounter with a prisoner presented for emergency treatment, which he was obligated under [the Emergency Medical Treatment and Active Labor Act] to provide." In addition, utilization of security measures during the course of rendering treatment to an inmate does not transform the treatment into state action as "this conduct is really nothing more than common sense accommodation of security officers in the proximity of a

of the defendant.

## C.  Lack of Deliberate Indifference

Even if Welch had filed this action prior to expiration of the limitation period, the evidentiary materials demonstrate that neither PHS nor its employees acted with deliberate indifference to Welch's medical needs.  To prevail on a claim concerning an alleged denial of adequate medical treatment, an inmate must, at a minimum, show that the medical personnel acted with deliberate indifference to his serious medical needs.  *Estelle v. Gamble*, 429 U.S. 97 (1976); *Taylor v. Adams*, 221 F.3d 1254 (11th Cir. 2000); *McElligott v. Foley*, 182 F.3d 1248 (11th Cir. 1999); *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989); *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir.1986).  Specifically, medical personnel may not subject an inmate to "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 106, 97 S.Ct. at 292; *Adams v. Poag*, 61 F.3d 1537, 1546 (11th Cir. 1995) (citation and internal quotations

---

patient."); *Katorie v. Dunham*, 108 Fed.Appx. 694, 698-699 (3rd Cir. 2004) (emergency room physician "under no contract with the state" and who treated arrestee with no participation by state officials did not act under color of state law); *Styles v. McGinnis*, 28 Fed.Appx. 362, 364 (6th Cir. 2001) (private physician who provided emergency staffing services to hospital as an independent contractor and who had no contractual relationship with the state could not be considered a state actor for purposes of § 1983); *Davis v. Dorsey*, 167 F.3d 411, 412-413 (8th Cir. 1999) (concluding district court properly granted summary judgment to private hospital not under contract to provide medical care to inmates as hospital did not act under color of state law in administering treatment to inmate); *Nunez v. Horn*, 72 F.Supp.2d 24, 27 (N.D.N.Y. 1999) (orthopedic surgeon who performed surgery at private hospital on inmate pursuant to referral but absent contract with Bureau of Prisons not a state actor); *Pino v. Higgs*, 75 F.3d 1461, 1466-1467 (10th Cir. 1996) (private emergency room physician not acting under color of state law for purposes of a § 1983 action when he examined, detained and certified plaintiff for transport under state commitment statute); *Ellison v. Garbarino*, 48 F.3d 192, 196-197 (6th Cir. 1995) (private physician "in no way contractually bound to the state" deemed not a state actor under § 1983); *West*, 487 U.S. at 56 n.15 (private individuals are not converted to state actors merely because the State pays for their services or regulates them in some way as source of payment not dispositive of state action; rather, it is "the context in which [the physician] performs the services for the State ..." which determines the nature of the action); *see also Crowder v. Conlan*, 740 F.2d 447, 451 (6th Cir.1984) (private hospital's denial of emergency room privileges and curtailment of surgical privileges is not state action for purposes of § 1983).

omitted) (As directed by *Estelle*, a plaintiff must establish "not merely the knowledge of a condition, but the knowledge of necessary treatment coupled with a refusal to treat or a delay in [the acknowledged necessary] treatment."

> That medical malpractice-negligence by a physician-is insufficient to form the basis of a claim for deliberate indifference is well settled. *See Estelle v. Gamble,* 429 U.S. 97, 105-07, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976); *Adams v. Poag,* 61 F.3d 1537, 1543 (11th Cir.1995). Instead, something more must be shown. Evidence must support a conclusion that a prison physician's harmful acts were intentional or reckless. *See Farmer v. Brennan,* 511 U.S. 825, 833-38, 114 S.Ct. 1970, 1977-79, 128 L.Ed.2d 811 (1994); *Cottrell v. Caldwell,* 85 F.3d 1480, 1491 (11th Cir.1996) (stating that deliberate indifference is equivalent of recklessly disregarding substantial risk of serious harm to inmate); *Adams,* 61 F.3d at 1543 (stating that plaintiff must show more than mere negligence to assert an Eighth Amendment violation); *Hill v. Dekalb Regional Youth Detention Ctr.,* 40 F.3d 1176, 1191 n. 28 (11th Cir.1994) (recognizing that Supreme Court has defined "deliberate indifference" as requiring more than mere negligence and has adopted a "subjective recklessness" standard from criminal law); *Qian v. Kautz,* 168 F.3d 949, 955 (7th Cir.1999) (stating "deliberate indifference" is synonym for intentional or reckless conduct, and that "reckless" conduct describes conduct so dangerous that deliberate nature can be inferred).

*Hinson v. Edmond*, 192 F.3d 1342, 1345 (11th Cir. 1999).

In order to properly establish "deliberate indifference to [a] serious medical need ..., Plaintiff[] must show: (1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's

injury." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306-1307 (11th Cir. 2009).  When seeking relief based on deliberate indifference, an inmate is required to establish "an objectively serious need, an objectively insufficient response to that need, subjective awareness of facts signaling the need and an actual inference of required action from those facts." *Taylor*, 221 F.3d at 1258; *McElligott*, 182 F.3d at 1255 (for liability to attach, the official must know of and then disregard an excessive risk to the prisoner).  Thus, deliberate indifference occurs only when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer*, 511 U.S. at 837; *Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998) (defendant must have actual knowledge of a serious condition, not just knowledge of symptoms, and ignore known risk to serious condition to warrant finding of deliberate indifference).  Furthermore, "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838.

In articulating the scope of inmates' right to be free from deliberate indifference, ... the Supreme Court has ... emphasized that not 'every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment.' *Estelle,* 429 U.S. at 105, 97 S.Ct. at 291; *Mandel,* 888 F.2d at 787.  Medical treatment violates the eighth amendment only when it is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.' *Rogers,* 792 F.2d at 1058 (citation omitted).  Mere incidents of negligence

18

> or malpractice do not rise to the level of constitutional violations.  *See Estelle,* 429 U.S. at 106, 97 S.Ct. at 292 ('Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.'); *Mandel,* 888 F.2d at 787-88 (mere negligence or medical malpractice 'not sufficient' to constitute deliberate indifference); *Waldrop,* 871 F.2d at 1033 (mere medical malpractice does not constitute deliberate indifference).  Nor does a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment support a claim of cruel and unusual punishment.  *See Waldrop,* 871 F.2d at 1033 (citing *Bowring v. Godwin,* 551 F.2d 44, 48 (4th Cir.1977)).

*Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991); *Taylor*, 221 F.3d at 1258 (citation and internal quotations omitted) (To show deliberate indifference to a serious medical need, a plaintiff must demonstrate that [the] defendants' response to the need was more than "merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law.").   Moreover, "as *Estelle* teaches, whether government actors should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment."  *Adams*, 61 F.3d at 1545; *Garvin v. Armstrong*, 236 F.3d 896, 898 (7th Cir. 2001) ("A difference of opinion as to how a condition should be treated does not give rise to a constitutional violation."); *Hamm v. DeKalb County*, 774 F.2d 1567, 1575 (11th Cir. 1985) (mere fact inmate desires a different mode of medical treatment does not amount to deliberate indifference violative of the Constitution); *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981) (prison medical personnel do not violate the Eighth Amendment simply because their opinions

19

concerning medical treatment conflict with that of the inmate-patient).  Self-serving statements by a plaintiff do not create a question of fact in the face of contradictory, contemporaneously created medical records.  *See Bennett v. Parker*, 898 F.2d 1530 (11th Cir. 1990).

In addition to the above described requisite elements, when an inmate's deliberate indifference claim alleges a delay in treatment, this court must also consider "(1) the seriousness of the medical need; (2) whether the delay worsened the medical condition; and (3) the reason for the delay." *Goebert v. Lee County*, 510 F.3d 1312, 1327 (11th Cir. 2007).  In a case alleging that delay in medical treatment shows deliberate indifference, the plaintiff "must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed." *Hill v. DeKalb Regional Youth Detention Center*, 40 F.3d 1176, 1187-1188 (11th Cir. 1994), *overruled in part on other grounds*, *Hope v. Pelzer*, 536 U.S. 730, 739 n.9, 122 S.Ct. 2508, 2515 n.9 (2002); *Mann*, 588 F.3d at 1307.

Initially, the court notes that Welch presents no verifiable medical evidence which indicates his wrist injury worsened prior to his examination by Dr. Chung; rather, the undisputed medical records indicate that the injury was stabilized during this period of time and that medication was made available to Welch in an effort to alleviate his pain and swelling.  Dr. Chung also noted that the injury noted in the X-rays from Jackson Hospital,

20

a perilunate dislocation of the wrist, remained the appropriate diagnosis.  Contrary to the assertion made by Welch, Dr. Chung did not note any bone fractures.  In addition, PHS officials authorized an orthopedic consultation for Welch on July 30, 2007 and the requested consultation was scheduled by Dr. Chung for August 13, 2007.

The objective medical records compiled contemporaneously with the treatment provided to Welch demonstrate that PHS and its employees did not act with deliberate indifference to Welch's wrist injury.  Upon Welch's arrival at the health care unit on the day of his injury, medical personnel evaluated his condition and immediately thereafter ordered that he be transported to the emergency room at Jackson Hospital for further evaluation and treatment.   When he arrived at Jackson Hospital, attending medical personnel examined Welch, evaluated his condition and ordered X-rays of his left wrist. The four radiological views of his wrist indicated "a peri-lunate dislocation of the wrist. No fracture is identified.  The soft tissue appear intact."  *Defendants' Exhibits - Doc. No. 25-1* at 12.  The emergency room physician chose to place a splint on Welch's wrist in an effort to treat his condition, advised Welch to elevate his wrist, provided him Lortab for pain, indicated Welch should be provided NSAIDs to alleviate pain/swelling, advised Welch to follow-up with his treating physician if his wrist "got worse or did not get better" and then released him to correctional personnel for return to Draper.  *Id*. at 6-9.

Upon his arrival at Draper, medical personnel ordered that he remain overnight in

the health care unit for observation.  During the following days, Welch was provided

access to medication for pain and swelling.  *Defendants' Exhibits - Doc. No. 45* at 34.  Due

to continued pain and swelling in his wrist, Welch filed three sick call requests seeking a

different course of treatment.  Based on these requests, medical personnel at Draper sought

authorization to refer Welch for an outside orthopedic consultation.  On July 30, 2007, Dr.

Corbier noted that Welch's "wrist is still swollen [and he] cannot flex or extend wrist" and

issued an Authorization Letter requiring that Welch be scheduled an appointment with Dr.

Chung for an orthopedic evaluation.  *Id.*  Pursuant to Dr. Corbier's authorization, PHS

personnel contacted Dr. Chung's office on August 1, 2007 and requested an appointment

for Welch.  *Id.* at 33.  Upon receipt of the information relevant to Welch's condition, Dr.

Chung scheduled the appointment for August 13, 2007.  *Id.* at 32.

Under the circumstances of this case, the court concludes that the course of

treatment undertaken by medical personnel in addressing Welch's wrist injury did not

violate his constitutional rights.  The medical care Welch received was certainly not "so

grossly incompetent, inadequate, or excessive as to shock the conscience or to be

intolerable to the fundamental fairness."  *Harris*, 941 F.2d at 1505.  The allegations

presented by Welch simply fail to establish deliberate indifference.  *Garvin*, 236 F.3d at

898 (difference of opinion regarding manner in which condition should be treated fails to

demonstrate a constitutional violation); *Adams*, 61 F.3d at 1545-1546 (Whether medical

personnel "should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis" on which to ground constitutional liability.); *Hamm*, 774 F.2d at 1505 (inmate's desire for some other form of medical treatment does not constitute deliberate indifference violative of the Constitution); *Franklin*, 662 F.2d at 1344 (simple divergence of opinions between medical personnel and inmate-patient do not violate the Eighth Amendment).  In addition, Welch's allegation that prison medical personnel did not diligently pursue additional treatment his condition is refuted by the record.

It is undisputed that Welch received medical care for his wrist.  It is likewise evident that medical personnel rendered treatment to Welch in accordance with their professional judgment.  Moreover, Welch has failed to present any evidence which indicates that the defendant, its employees or referral medical personnel knew that the manner in which they provided treatment created a substantial risk to Welch's health and that with this knowledge consciously disregarded such risk.  The record is therefore devoid of evidence, significantly probative or otherwise, showing that the defendant acted with deliberate indifference to Welch's medical needs.  Consequently, assuming *arguendo* the complaint had been timely filed, the defendant would be entitled to summary judgment.

## IV. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

23

1.  The defendant's motion for summary judgment be GRANTED.

2.  Judgment be GRANTED in favor of the defendant.

3.  This case be dismissed with prejudice.

4.  No costs be taxed herein.

It is further

ORDERED that on or before November 25, 2013 the parties may file objections to this Recommendation.  Any objections filed must clearly identify the findings in the Magistrate Judge's Recommendation to which the party is objecting.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (11th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all decisions of the former Fifth Circuit handed down

24

prior to the close of business on September 30, 1981.

      Done this 8th day of November, 2013.


              /s/Terry F. Moorer
              TERRY F. MOORER
              UNITED STATES MAGISTRATE JUDGE